UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

JAMES KILKENNY, ET AL., AS TRUSTEES OF THE CONSTRUCTION COUNCIL LOCAL UNION 175 PENSION FUND, JAMES KILKENNY, ET AL., AS TRUSTEES OF THE CONSTRUCTION COUNCIL LOCAL 175 WELFARE FUND, JAMES KILKENNY, ET AL., AS TRUSTEES OF THE CONSTRUCTION COUNCIL LOCAL 175 ANNUITY FUND, and JAMES KILKENNY, ET AL., AS TRUSTEES OF THE CONSTRUCTION COUNCIL LOCAL 175 TRAINING FUND,

                Plaintiffs,

        - against-

FLUSHING ASPHALT, LLC,

                Defendant.
-----------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-1822 (OEM) (JMW)

**ORELIA E. MERCHANT, District Judge:**

On March 31, 2022, Construction Council Local 175 Pension Fund, Construction Council Local 175 Welfare Fund, Construction Council Local 175 Training Fund, (collectively, the "Funds") and the Trustees thereof ("Trustees") (together, "Plaintiffs"), brought this action against Flushing Asphalt, LLC ("Defendant" or "Asphalt"), under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Plaintiffs seek collection of unpaid benefit fund contributions, plus interest, the greater of additional interest or liquidated damages in the form of 20 percent of the contributions due, auditors' fees, attorneys' fees, and other collection costs from the Defendant. Complaint ("Compl."), ECF 1 ¶ 1. Before the Court is Plaintiffs' motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, Plaintiffs' motion is **GRANTED in part,** as to Plaintiffs' claims for damages from delinquent contributions for Arias, and **DENIED in part,** as to Plaintiffs' claims for alleged delinquent contributions for Nieminski and Guerrero.

1

## BACKGROUND[1]

### A. The Parties

Plaintiffs are trustees and fiduciaries of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Pls. 56.1 ¶¶ 1-2. The Funds are employee benefit plans maintained for the purpose of collecting and receiving contributions and providing, *inter alia*, various annuity, apprenticeship improvement and safety fund, training, welfare, and related benefits to qualified participants and their dependents. *Id.* ¶¶ 3, 5. The Funds were established pursuant to the terms of various collective bargaining agreements ("CBAs") with labor organizations representing employees in various sectors. Declaration of Charles Priolo ("Priolo Decl."), ECF 25-14, ¶ 14. Additionally, the Funds are operated pursuant to the terms of the Agreements and Declarations of Trust for the Pension Fund ("the Pension Fund Trust Agreement"), the Welfare Fund (the "Welfare Fund Trust Agreement"), the Annuity Fund (the "Annuity Fund Trust Agreement"), and the Construction Council Local 175 Training Fund (the "Training Fund Trust Agreement") (collectively, the "Trust Agreements"). Pls. 56.1 ¶ 4.

James Horan owns Asphalt, which is a New York-based company engaged in the asphalt manufacturing and recycling business. *Id.* ¶ 8. Asphalt is an employer under ERISA, as defined in 29 U.S.C. § 3(5) and 29 U.S.C. 1002(5). *See* Compl. ¶ 9.[2] The Trustees, acting as fiduciaries of the Funds, bring this lawsuit to enforce the contribution provisions of the CBAs pursuant to 29 U.S.C. §§ 1002(21)(A) and 1132(a)(3). *See Laborers Health & Welfare*

---

[1] The following facts are taken from the parties' respective Local Rule 56.1 statements which contain both the initial 56.1 statements of fact, and the counterparty's response thereto. *See* Plaintiffs' Statement of Material Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgement Pursuant to Local Civil Rule 56.1 ("Pls. 56.1"), ECF 25-1; Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"), ECF 28-1. All facts herein are undisputed unless otherwise noted.

[2] The complaint is unverified and therefore cannot be considered as evidence at summary judgment but the Court will draw facts from it for context. *See Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence." (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995))).

*Tr. Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); *See also Trs. of Mosaic & Terrazo Welfare Pension v. Cont'l Floors, Inc.*, 13-CV-1739 (ILG) (SMG) 2013 WL 5637492, at *4 (E.D.N.Y. Oct. 15, 2013).

 B. **Collective Bargaining Agreements**

  Asphalt signed CBAs with Construction Council Local 175 ("Local 175"), and Construction Council Local 175P ("Local 175P") (together, the "Union"). Pls. 56.1 ¶ 20. These CBAs, including the Asphalt Plant CBA and the Asphalt Recycle CBA, require the Defendant to make contributions to the Funds in specified amounts for each hour of covered work and bind Defendant to the terms of the Trust Agreements, which are incorporated by reference into the CBAs. *Id.* ¶¶ 28, 32. The Asphalt Plant CBAs and Asphalt Recycle CBA designate the Union as the "sole and exclusive collective bargaining representative for the employees in the described bargaining unit." *Id.* ¶¶ 24-25; Priolo Decl., Ex. F, Asphalt Plant Agreement July 1, 2020 to June 30, 2023, ECF 25-20, 3; Priolo Decl., Ex. G, Asphalt Plant Recycle Agreement October 1, 2018 to September 30, 2023, ECF 25-21, 4. The parties amended the Asphalt Plant and Recycle CBAs and the Addendum controls whenever the language in the CBA conflicts with that of the Addendum. Pls. 56.1 ¶ 30.

  Pursuant to the CBAs, Asphalt agreed to provide contributions to the Funds, which were due on or before the 30th day of each month, for hours worked during the preceding month. *Id.* ¶ 62. The Funds are entitled to charge interest on delinquent contributions. Interest begins accruing the day each unpaid contribution was due and continues accruing until the contribution is actually paid in accordance with the CBAs and the Funds' Trust Agreements. *Id.* ¶ 63. According to Plaintiffs, Asphalt failed to "accurately make contributions to the Funds on a timely basis" from October 1, 2019, through June 30, 2021, and consequently, Asphalt is in breach of its contractual obligations under the CBAs and the Funds' Trust Agreements. Compl. ¶ 27.

### C. Payroll Compliance Examination Findings

Based on the provisions of the CBAs, the Trust Agreements, and the Funds' Collection Policy, the Funds can require payroll compliance examinations to determine whether Asphalt properly remitted contributions. Pls. 56.1 ¶ 34. On or around December 7, 2021, the Funds commissioned auditing firm Wagner & Zwerman to conduct two audits, pursuant to the Asphalt Plant CBA and the Asphalt Recycle CBA. *Id.* ¶¶ 50-51, 56, 64. The auditors relied on Asphalt's paperwork to conduct the payroll compliance examinations. *Id.* ¶¶ 91-92.

The payroll compliance examinations identified allegedly delinquent contributions for three employees for the period from October 1, 2019, through June 30, 2021: for Marino Arias and Christopher Nieminski, pursuant to the Asphalt Plant Division CBA, delinquent contributions totaled $146,093.34; and for Ivan Guerrero, pursuant to the Asphalt Recycle CBA, delinquent contributions totaled $64,361.38. *Id.* ¶¶ 50-51, 60-61. Plaintiffs also allege that they are entitled to interest at the rate of 10 percent per annum, plus liquidated damages, plus fees. *Id.* ¶ 60. Plaintiffs seek relief on their claims against Defendant pursuant to ERISA, 29 U.S.C. §§ 1001, *et seq. Id.* ¶ 16.

Defendant does not dispute the number of hours the auditors found Arias performed covered work by the Asphalt CBA. *Id.* ¶¶ 106, 114. Defendant also does not dispute the number of hours the auditors found Nieminski and Guerrero performed covered work. *Id.* ¶¶ 70, 106.

Initially, Defendant did not contest that the hours Guerrero worked in the recycling section of the business were covered by the Recycle CBA, but later, Defendant asserted that a verbal agreement excluded Guerrero from the Union and that, in any event, Guerrero did not perform work covered by the CBA. *Id.* ¶¶ 48, 65-71. Defendant asserts that Plaintiffs have presented no admissible evidence that Guerrero performed covered work. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Def's

Opp."), ECF 26-1, at 18. The Recycle CBA's text does not exclude Guerrero from the category of covered workers. Pls. 56.1 ¶ 66.

Nieminski worked for Asphalt as a Shipper. *Id.* ¶ 47. The only written agreement regarding Nieminski's work as a Shipper is the Asphalt Plant CBA. *Id.* ¶ 94. There is no written contract indicating that Nieminski was excluded from the Union. *Id.* ¶ 100. Although Nieminski had a separate CBA at one time, but he was still part of Union Local 175. *Id.* ¶ 77. Under the CBAs, the Union can demand the discharge of worker who is not part of the Union, but a worker is not required to be discharged for not being in the Union. *Id.* ¶ 72. At the time of the audits, Defendant informed the auditors that Nieminski was a "dispatcher" and "part of the office." *Id.* ¶ 89. Kenneth Reese and Ralph Hoeffner, who worked for Defendant as Shippers before Nieminski, were in the Union. *Id.* ¶ 104. Although the Asphalt Plant CBA Addendum states that there "will be no job classifications [,]" the Asphalt Plant CBA still references a Shippers Agreement. *Id.* ¶¶ 87, 108, 110.

### D.     Asphalt's Defenses

Defendant raises several defenses, arguing that it does not owe delinquent contributions. Def's Opp. at 5. Specifically, Defendant argues: (1) the Shipper position is excluded from the Asphalt Plant CBA, and the terms of the CBA control when contributions to the Funds are due, *id.* at 7-12; (2) the Asphalt Plant CBA's terms regarding the Shipper position are ambiguous, and any ambiguity in the CBA renders summary judgment inappropriate, *id.* at 12-15; (3) union membership is required for employees to qualify for contributions, *id.* at 15-17; (4) Guerrero did not perform covered work, consistent with a verbal agreement, *id.* at 17-18; and (5) the Funds waived their right to collect contributions on behalf of Nieminski and Guerrero when they failed to seek contributions for either individual in prior audits, *id.* at 18-20. Therefore, Defendant argues, that Plaintiffs are not entitled to summary

5

judgment on their claim for delinquent contributions plus liquidated damages, interest, or attorneys' fees. *Id.* at 20.

## PROCEDURAL HISTORY

Plaintiffs filed a complaint against Defendant on March 31, 2022. *See generally* Compl. On April 12, 2022, Plaintiffs served Defendant through the Secretary of State of the State of New York. *See* Summons Returned Executed, ECF 5. On June 14, 2022, Plaintiffs requested a certificate of default from the Clerk of Court. *See* Request for Certificate of Default, ECF 6. After the Clerk of Court entered a default judgment against Defendant on June 16, 2022, Defendant's attorney entered his notice of appearance on June 21, 2022. *See* Clerk's Entry of Default, ECF 7; Notice of Appearance, ECF 8. Defendant filed an Answer to the Complaint on August 22, 2022. *See* Answer to Complaint, ECF 15. The parties stipulated and agreed to vacate the Clerk's Entry of Default on December 6, 2022. *See* Order granting Motion to Vacate, ECF 18. On January 19, 2024, Plaintiffs filed their summary judgment papers. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("Pls Memo"), ECF 25-26; Pls 56.1; Declaration of Plaintiff's Attorney Elise Feldman in Support of Motion ("Feldman Decl."), ECF 25-2; Priolo Decl. On January 19, 2024, Defendant also filed its opposition papers. *See* Def's Opp; Declaration of James Horan ("Horan Decl."), ECF 26-2; Def's Reply 56.1; Def. 56.1; Defendant's Statement of Additional Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def's Add. 56.1"), ECF 26. Plaintiffs filed their reply also on January 19, 2024. *See* Plaintiffs' Memorandum of Law in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls. Reply Memo"), ECF 27-1; Declaration of Anthony Franco in Support of Plaintiffs' Motion for Summary Judgment and in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Franco Decl."), ECF 27-2. On January 23, 2024, the parties alerted the court to a filing issue. *See* Joint Motion for Extension of Time to Amend Plaintiff's Reply, ECF 29. On February 15, 2024, Plaintiff filed

6

an amended reply.  Reply in Support re: Order on Motion for Extension of Time to Amend ("Amended Reply"), ECF 30.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).  The moving party bears the burden of showing that they are entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).  Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'"  *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir.2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir.1997)) (alteration in original).

If the moving party meets its burden of demonstrating the absence of a disputed issue of material fact, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Sheet Metal Workers' Nat'l Pension*

*Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014). The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). If the evidence favoring the nonmoving party is "merely colorable ... or is not significantly probative, summary judgment may be granted." *Anderson* 477 U.S. at 249-50 (internal citations omitted).

To prevail on their motion for summary judgment, Plaintiffs must demonstrate that the CBAs impose a clear obligation on Defendant to make the required contributions. Under ERISA, the burden first lies with the Plaintiffs to establish a prima facie case by showing inaccuracies in the employer's contributions. *See Local 282 Welfare Tr. Fund v. A. Morrison Trucking, Inc.*, CV-92-2076 (JMA) 1993 WL 120081, at *1 (E.D.N.Y. Mar. 30, 1993). Once Plaintiffs make this showing, the burden shifts to the employer to provide evidence of the precise amount of work performed, or to refute an audit's assumptions. *See Sheet Metal Workers' Nat'l Pension Fund*, 993 F. Supp. 2d at 249.

## DISCUSSION

ERISA § 502(a)(3) gives trustees authority to recover delinquent contributions from employers in federal court. Pls. Memo at 5. Plaintiffs assert claims based on ERISA § 515, which mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *See* 29 U.S.C. § 1145; Pls. Memo at 5.

Plaintiffs allege that Defendant failed to make contributions required by the CBA, as confirmed by third-party, independent auditors. The audits identified delinquent contributions for three employees: Arias, Guerrero, and Nieminski. The findings for Arias are uncontested.

[3] Initially, Guerrero's covered work hours were uncontested[4], but Defendant later argued that there was a verbal agreement excluding Guerrero from the Union and that Guerrero did not perform covered work. Pls. Memo at 6. Lastly, Defendant does not dispute the audits' findings regarding the number of hours that Nieminski worked. [5]

Plaintiffs argue that they are entitled to summary judgment against Defendant pursuant to the CBAs and Sections 502(a)(3) and 515 of ERISA. Plaintiffs seek $210,454.72 in delinquent contributions owed, $20,151.53 in interest on delinquent contributions, and $21,045.47 in liquidated damages, plus attorney's fees and costs. Pls. Memo at 2.

### A. Plaintiffs' Prima Facie Case

The CBAs at issue in this case are subject to Section 515 of ERISA. The relevant portions of the work subject to the CBAs are set forth in the Asphalt Plant Agreement from July 1, 2015, to June 30, 2020, the Asphalt Plant Agreement from July 1, 2020, to June 30, 2023, and the Asphalt Plant Recycle Agreement from October 1, 2018, to September 30, 2023. The CBAs address wages and working conditions for employees who perform covered work. *See generally*, Priolo Decl. Exhibits E-G.

Pursuant to the CBAs Defendant signed with the Union and the Funds' Trust Agreements, Defendant agreed to remit contributions to the Funds based on the number of hours Defendant's workers spent performing covered work. Pls. 56.1 ¶¶ 20, 22-23, 27-28, 30, 32-34, 50-51. Defendant was also bound to the Funds' Trust Agreements. *Id.* ¶¶ 22-23, 31-33.

As described above, Wagner and Zwerman, a third-party audit firm, conducted a payroll examination, which revealed contribution deficiencies in the Asphalt Plant Division from

---

[3] "Marino Arias is in the Union and is covered by the CBA." Pls. 56.1 ¶ 114.
[4] "Flushing Asphalt has no objection as to the hours found to have been worked by Ivan Guerrero, the worker found in the Asphalt Plant Recycle Payroll Compliance Examination." Pls. 56.1 ¶ 70.
[5] "Flushing Asphalt has no problem with the hours in the payroll compliance examinations for Nieminski and Arias, workers found in the Asphalt Plant Division Payroll Compliance Examination. The hours, it says, are accurate." Pls. 56.1 ¶ 106.

9

October 1, 2019, through June 30, 2021, totaling $146,093.34.  Pls. 56.1 ¶¶ 50-51, 60-61. Likewise, the payroll exam for the Asphalt Recycling Division revealed contribution deficiencies from October 1, 2019, through June 30, 2021, totaling $64,361.38.  *Id.*  Plaintiffs sent the payroll exam findings to Defendant and Defendant refused to pay the contributions owed, causing Plaintiffs to bring this action.  *Id.* ¶¶ 9-10, 16.  Through the audit findings of delinquent contributions owed for Arias, Nieminski, and Guerrero, Plaintiffs have made a prima facie case that Defendant violated ERISA Section 515.

**B.      Defendant's Defenses**

Because Plaintiffs have made a prima facie case for an ERISA Section 515 violation, the burden shifts to Defendant to "provide evidence of the precise amount of work performed or to refute the audits' assumptions." *See Sheet Metal Workers' Nat'l Pension* 993 F. Supp. 2d at 249.  Here, Defendant does not dispute the precise amount of work Arias, Nieminski, and Guerrero performed.  Instead, Defendant disputes the payroll compliance examination's findings.  Def's Reply 56.1 ¶ 61.

Defendant's ability to refute the audits' findings is limited by the defenses available to employers who are sued under ERISA § 515.  "Congress intended to limit the defenses available to an employer when sued by an employee benefit plan ... [because] under ERISA § 515, multiemployer pension funds, although third-party beneficiaries of collective bargaining agreements between employers and unions, are nevertheless in a position superior to the original promisee [the union]." *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 653 (2d Cir. 1994) (cleaned up).  Once an employer agrees to contribute to a benefit plan, they cannot try to escape their obligation by questioning the union's ability to enforce the contract.  *See Sciascia v. Rochdale Vill., Inc.*, 851 F. Supp. 2d 460, 467 (E.D.N.Y. 2012) (citing *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990)).

10

Indeed, "an employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement, that the employer was fraudulently induced to enter into the agreement, or that no contract was formed because of unilateral or mutual mistake of fact[.]" *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (citations omitted).

Therefore, the only defenses recognized under ERISA Section 515 are: (1) the contributions are not in accordance with the CBA's terms and thus constitute nonexistent contractual obligations; (2) the contributions are illegal; or (3) the CBA itself is void, not merely voidable. *See Sciasia*, 851 F. Supp. 2d at 467; *DeVito*, 38 F.3d at 653; *see also Benson*, 907 F.2d at 314; *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86-88 (1982). Here, Defendant argues that Plaintiffs are seeking contributions that do not comport with the CBA's terms. Def's Opp. 5-6. Specifically, Defendant argues that the CBA excluded the Shipper position from coverage, and in the alternative, the CBA is ambiguous regarding the Shipper position such that Defendant is only obligated to make contributions for union members, and that Guerrero did not perform covered work under the CBA. *Id.*

### 1. The CBA Excludes the Shipper Position from Coverage

Plaintiffs' Section 515 claim regarding Nieminski and the Shipper position fails because Plaintiffs fail to demonstrate that no disputed issue of material fact exists with respect to whether the CBA covers the Shipper position. While a reasonable factfinder could conclude that the CBA obligated Defendant to make contributions on behalf of Nieminski, the text of the CBA is ambiguous.

#### a. Text of the CBA

The Asphalt Plant Agreement, covering the period from July 1, 2015 to June 30, 2020, spans approximately 19 pages, including two addenda. *See generally*, Priolo Decl. Exhibit E. The Asphalt Plant Agreement covering the period from July 1, 2020 to June 30, 2023, spans

11

approximately 17 pages, including one addendum. *See generally*, Priolo Decl. Exhibit F. The Addenda to the Asphalt CBAs amend the original CBA to the extent that language in the original CBA document contradicts language in the Addendum. Priolo Decl., ¶¶ 21- 22; Priolo Dec., Ex. E, Asphalt 15-20 CBA; Priolo Decl., Ex. F, Asphalt 20-23 CBA. "The original Asphalt Plant CBA language includes reference to the outdated separate Shippers Agreement … The Addendum to each successive Asphalt Plant CBA does not remove the Shipper position from the required coverage; [but] it does remove the separate Shipper agreement requirement: [with the words] 'No Shipper agreement.' … Flushing Asphalt's powers as employer remain 'specifically limited by express provisions of this Agreement as modified by this Addendum.'" Pls. 56.1 at ¶¶ 108-10.

On the other hand, the Asphalt Plant *Recycle* Agreement, spans approximately eight pages. Priolo Decl. Exhibit G. The CBAs govern the terms and conditions of covered workers' employment and compensation.

Defendant argues that Nieminski only worked in the "Shipper" position for Asphalt[6] and thus "Plaintiffs are only entitled to contributions for hours [] Nieminski worked *if the Asphalt Plant CBA required contributions for the Shipper position*" regardless of union membership. Def's Opp. at 2-3 (internal citations omitted) (emphasis added). Defendants argue that "Flushing Asphalt does not owe contributions on behalf of Mr. Nieminski because the Asphalt Plant CBA, relied upon by the Funds, specifically excludes the Shipper position from coverage under its terms." *Id.* at 3.

Defendant cites the CBA's language, which indicates that the Shipper is covered by a separate agreement, and the addendum which states "No Shipper agreement," to argue that the Shipper is excluded from coverage. While the main CBA retains language about a separate

---

[6] Nieminski is a Shipper at Asphalt, meaning that he uses the scale to weigh trucks in and out. Nieminski has only worked for Asphalt as a Shipper. Def's 56.1, ¶¶ 138, 140.

12

Shipper agreement, the addenda clarify that no such agreement exists. Pls. 56.1 at 25. Defendant argues that the Shipper position remains outside of the CBA's scope because the addenda did not remove the exclusion but merely eliminated the need for a separate Shipper agreement to ensure coverage.

Plaintiffs counter that the Shipper position is included in the bargaining unit. Plaintiffs cite the CBA's language, which lists the Shipper alongside covered positions. Moreover, Plaintiffs cite Article IA, Section 3, which states: "A Union Shipper will be employed in each Asphalt Plant or Yard with a separate agreement to be signed by the Employer and Local Union 175-P." Pls. Reply Memo at 4-5.

Plaintiffs underscore that although the CBA initially required a separate agreement for the Shipper position, the Addendum to the Asphalt Plant CBA clearly eliminates this requirement by noting that there will be "No Shipper agreement[.]" Pls. Reply Memo at 9. Plaintiffs argue that the elimination of the separate Shipper agreement does not remove Shippers from the CBA's coverage; rather, the elimination incorporated the Shipper position into the general terms of the CBA, making Shippers subject to the CBA without needing a separate agreement.

Furthermore, Plaintiff highlights that the Addendum to the Asphalt Plant CBA specifically states that there "will be no job classifications." Priolo Decl., Ex. E, 15-20 Asphalt CBA, Addendum; Priolo Decl., Ex. F, 20-23 Asphalt CBA, Addendum. Based on this language, Plaintiffs contend that Defendant should have been aware that the Shipper classification outlined in Article IA Section 3 was no longer operative. *Id.*

In contrast, Defendant asserts that the CBA's recognition clause excludes the Shipper position, pointing to its listing of covered job titles without explicitly merging the Shipper into the bargaining unit:

> The Employees referred to herein are those who are now employed or to be employed as Mixer Men, Repair Men, Grease Men, Welders, Conveyor Men,

13

> Belt Men, Dust Men, Barge and Boat Trimmers, Cleaner Men, Fork Lift Operators, Hilo Operators and all other laborer including those in the moving and placing of boats and barges, and in the handling, tying and untying on barges and docks, and in the cleaning of plants or yards and all other Material Yard Workers in Asphalt Plants operated and/or owned by the Employers … A Union Shipper will be employed in each Asphalt Plant or Yard with a separate agreement to be signed by the Employer and Local Union 175-P.
> Def's Opp. at 4-5.

Defendant contends that this section of the CBA demonstrates that the Shipper position is "specifically excluded from the Asphalt Plant CBA". *Id.* at 5. As Defendant argues, the Addenda referenced by Plaintiffs that read "No Shipper agreement" do not cure the apparent exclusion. *Id.* Moreover, Defendant argues that "the fact that the Addendum also says that '[t]here will be no job classifications' also does not mean the Shipper position is somehow pulled into the recognition clause." *Id.* at 6.

The Supreme Court and the Second Circuit "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 179 (2d Cir. 2019). "In this endeavor, as with any other contract, the parties' intentions control." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010) (internal quotation marks omitted). "'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.' 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston) (internal quotation marks omitted)." *M&G Polymers USA,* LLC, 574 U.S. at 435. Contract language "is unambiguous when it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion." *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997). "[U]nambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 n.6 (2d Cir. 2007). Defendants cannot "use extrinsic evidence to establish the

ambiguity of a facially unambiguous collective bargaining agreement. *See, e.g., Id.* ("Whether ERISA plan language is ambiguous is a question of law that is resolved by reference to the contract alone." (internal quotation marks omitted))."

By contrast, "[c]ontract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *In re Delta Airlines Inc.*, 313 F. App'x 430, 434 (2d Cir. 2009) (quoting *Seiden Assocs. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). When courts find provisions ambiguous, they "look to extrinsic factors—such as bargaining history, past practices, and other provisions in the CBA—to interpret the language in question. In addition, as with all contracts, courts should attempt to read CBAs in such a way that no language is rendered superfluous." *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000) (internal citations omitted).

Here, the Court finds that the language of the Asphalt Plant CBA is ambiguous regarding whether the Shipper position is covered. Article IA Section 3, when read alongside the addendum's "No Shipper agreement" and "no job classifications" clauses, is reasonably susceptible to multiple interpretations. While the inclusion of the Shipper in the CBA's text combined with the "No Shipper agreement" addendum clause, could indicate that the Shipper *is* covered, the absence of a separate agreement could *also* indicate that the Shipper *is not* covered.

Because both parties have proffered conflicting, but reasonable interpretations of "Shipper" and its inclusion or exclusion in the CBA, the Court concludes that the CBA is ambiguous on whether the Shipper is included in the Agreement.

Given the contract's facial ambiguity, the Court turns to extrinsic evidence to determine whether the evidence can definitively resolve the ambiguity. *See Honeywell*, 933 F.3d at 185

(citing *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) ("[I]f ambiguity exists, then extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language."))

### b. Extrinsic Evidence

Plaintiffs present past practices suggesting Shippers were part of the bargaining unit, and Plaintiffs cite testimony that since 2003, all employees, including Shippers, have been covered by the CBA through the addenda. Priolo Decl. Ex E at 19; Pls. Memo at 18.

Defendant, however, points to testimony from Horan, an Asphalt owner, stating that he negotiated with the union president and "it was very clear that [Nieminski would not] be a 175 union guy." Def's Opp. at 9. Defendant also points out that the Union has never sought dues or contributions on Nieminski's behalf, which Defendant asserts is an indication that the Shipper position was not included in the CBA. *Id.* Finally, Defendant states that the exclusion of the Shipper position is reinforced by the fact that "the Union president, Fred Clemenza, recognizes the Asphalt Plant CBAs do not – on their face – merge the Shipper position into the other jobs identified in the agreements." Def's Opp. at 5.

Plaintiff responds by pointing out that "Flushing's allegation of a verbal agreement to keep the shipper out of the CBA undermines its attempt to simultaneously portray the CBA as ambiguous as to its inclusion of the shipper position." Pls. Memo at 18-19. As Plaintiffs suggest, Asphalt's "attempt to simultaneously portray the CBA as ambiguous as to its inclusion of the shipper position" is undermined by its "allegation of a verbal agreement to keep the shipper out of the CBA [.]" *Id.* The Court agrees.

Ultimately, the extrinsic evidence does not conclusively resolve the parties' intent regarding the Shipper's inclusion in the CBA. Given the contract's ambiguity, and in light of the conflicting evidence, the Court concludes that summary judgment is inappropriate. As the Second Circuit noted in an earlier case, "it is not the province of this court to weigh competing

16

evidence, at this juncture we cannot resolve which evidence supports the correct interpretation." *Honeywell*, 933 F.3d at 185 (internal citations omitted).

### 2. Even if the CBA did Cover the Shipper Position, Union Membership is Required for Contributions

Defendant argues that even if the CBA covered the Shipper position, union membership is required to receive contributions, and because Nieminski and Guerrero were not union members, Defendants do not owe contributions on their behalf. Def's Opp. at 15-17. The Court finds that Plaintiffs are not entitled to summary judgment with respect to their contribution claim for Nieminski. Therefore, the Court need not address Defendant's union membership defense for why Asphalt did not make contributions on Nieminski's behalf.

#### a. Asphalt Does Not Owe Contributions for Guerrero's Work

With respect to Guerrero, Defendant asserts that it does not owe contributions for Guerrero because: (1) Guerrero was not in the Union; (2) Plaintiffs rely on union president Clemenza's testimony to establish delinquent contributions owed, which Defendant contends is based on inadmissible hearsay; and (3) Priolo, a Trustee of the Plaintiff Funds, testified that only dues-paying Union members can receive contributions on their behalf. Def's Opp. at 13-14.

#### b. Guerrero Was Not in the Union

Defendant opposes Plaintiffs' contention that Asphalt owes contributions for non-union employees. Pls. Reply Memo at 7; Def's Opp. at 14. According to Defendant, Union membership is a prerequisite to being covered by the agreement. Defendants rely primarily on testimony from Charlie Priolo, Trustee of the Plaintiff Funds, to argue that because Nieminski nor Guerrero were Union members, no contributions are due on their behalf. Def's Add. 56.1 ¶ 154.

> Mr. Priolo testified that only dues paying members can receive contributions on their behalf. Priolo Dep. 43:19-22 ("A: Do you know whether or not they were dues paying

members of the union?  A: Yes.  They have to be dues paying members, yes. Q: Yeah, because in order for you to get contributions, they have to be dues paying members. Correct?  A: Yes.") Mr. Priolo further testified that if an employee is not a member of the union, they are not covered by the contract. ("Q: And if they're not a member of the union, they're not covered by the contract.  Correct?  A: Yes.")
Def's Add. 56.1 at ¶¶ 155-56.

In response, Plaintiffs note that "[a] witness's misapprehension of the law and mistaken representations of policy are not a defense against Defendant's obligation to remit contributions to the Plaintiff ERISA Funds under the CBA and ERISA."  Pls. Reply Memo at 7.  While Plaintiffs acknowledge that testimony may be considered as extrinsic evidence in interpreting an ambiguous contract, they argue that Priolo's testimony does not alter the CBA's requirements.

Second, Defendant notes that the Asphalt CBA implies that contributions are required only for Union members based on the following excerpt: "The Union is now and hereafter the sole and exclusive collective bargaining representative for the employees in the described bargaining unit with respect to wages, hours, benefits, and all other terms and conditions of employment."  Def's Opp. at 11.

Third, Defendant argues that the CBA required all employees covered by the agreement to "become and remain members of Local Union 174-P as a condition of continued employment."  *Id.*

Plaintiffs argue that the Fund's policy is to "collect delinquent contributions from all covered workers, union and nonunion alike." Pls. Reply Memo, at 7.  Plaintiff maintains that:

> [N]either of the CBAs require an employee to become a member of the Union. Rather, both the Recycle Agreement, which covers Guerrero, and the Asphalt Plant Agreement, which covers Nieminski provide the Union with a contractually-sanctioned remedy, if the Union should *choose* to require membership. It is optional, as the CBA merely requires the Employer to follow the Union's direction, should it 'demand' that the employer discharge the employee.  (Pl. 56.1 ¶¶ 26, 72; Pl. Reply 56.1 ¶ 122).  There is no contractual requirement that the Union make such a demand.
> Pls. Reply Memo, at 7.

Ultimately, the Court concludes that Defendant has established that there is a disputed issue of material fact regarding whether contributions are owed on behalf of non-union members. If Union members are not included in the CBAs, then Asphalt clearly would not owe contributions on Nieminski's or Guerrero's behalf. Therefore, because there is a genuine dispute as to whether Guerro was in the Union, the Court denies Plaintiffs' motion for summary judgment for delinquent contributions as to Guerrero.[7]

### C. Plaintiffs' Claim for Liquidated Damages, Interest, and Attorneys' Fees

Plaintiff seeks delinquent contributions on behalf of Arias. The Defendant states the following in a declaration: "Flushing Asphalt does owe a small amount of contributions for Marino Arias, which will be remitted on or before January 8, 2024." Horan Decl. ¶ 20. Plaintiffs state that "Flushing does not oppose the audit findings for worker Marino Arias. However, Flushing has not made payment on those findings." Pls. Memo at 23 (citations omitted). According to Plaintiffs, Defendant made contributions for Arias on January 10, 2024. Amended Reply at 10. Although Defendant paid Plaintiffs, "an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). Therefore, because Defendant conceded that it owed delinquent contributions for Arias, but failed to pay before Plaintiffs filed suit, the Court grants Plaintiff's claim for damages under Section 1132(g)(2) of ERISA.

---

[7] Thus, the Court need not address Defendant's second and third defenses to deny Plaintiff's summary judgment with respect to claims for delinquent contributions related to Guerrero.

19

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **GRANTED in part,** as to Plaintiffs' claims for damages from delinquent contributions for Arias, and **DENIED in part,** as to Plaintiffs' claims for alleged delinquent contributions for Nieminski and Guerrero.

**SO ORDERED.**

Dated:        September 28, 2024
              Brooklyn, New York

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

20